T.C. Summary Opinion 2012-49

UNITED STATES TAX COURT

KATHLEEN MURRAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6484-07S.                    Filed May 23, 2012.

<u>Jon Harvey Lieberg</u>, for petitioner.

<u>Monica D. Gingras</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463.[1]  Pursuant to section 7463(b), the decision to be entered

_____

[1]Unless otherwise indicated, subsequent section references are to the Internal
Revenue Code of 1986, as amended, in effect for the relevant period.  Rule
(continued...)

is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated December 14, 2006 (notice), respondent determined the following deficiencies in, and accuracy-related penalties with respect to, petitioner's Federal income taxes:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 2003 | $8,547 | $1,709 |
| 2004 | 6,110 | 1,222 |
| 2005 | 4,510 | 902 |

After concessions, the issues for decision are: (1) whether for each year in issue petitioner is entitled to various trade or business expense deductions; if so, (2) whether for any of those years any such deductions are properly reportable on a Schedule C, Profit or Loss From Business, as petitioner claims, or whether such deductions, if otherwise allowable, must be claimed as unreimbursed employee business expense deductions on a Schedule A, Itemized Deductions; (3) whether for 2004 and 2005 petitioner is entitled to an itemized deduction for State and local income taxes not claimed on her Federal income tax return for either of those years; (4) whether for 2005 petitioner is entitled to a medical expense deduction not

_____

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure.

claimed on her 2005 Federal income tax return; and (5) whether petitioner is liable

for a section 6662(a) accuracy-related penalty for any year in issue.

## Background

Some of the facts have been stipulated and are so found. At the time the

petition was filed, petitioner resided in California.

Starting at a time not disclosed in the record and ending at a time before the

start of 1999, petitioner earned a living as a self-employed horse trainer. In

connection with this occupation she owned several vehicles and at least one horse

trailer.

During the years in issue petitioner owned a variety of vehicles, including a

1997 Ford E-250 van (1997 Ford); a 2004 Dodge 3500 truck purchased in late 2003

for $47,793.51 (2004 Dodge); and two horse trailers, one used when she was

training horses, and a Sundowner Stampede 3HGN trailer purchased in mid-2004

(Stampede horse trailer). She also owned several horses during the years in issue;

however, she no longer offered her services as a horse trainer. Petitioner made

several permanent modifications to the cargo area of the 1997 Ford, including the

installation of shelving and a generator, leaving only the front bench for seating.

During 1999 petitioner met Ernest Helm (Mr. Helm), a cable splicer

employed by Prime West Communications, Inc. (Prime West). Cable splicing is a

process by which wires are physically added to an existing telephone line system in order to accommodate new customers or new lines of service. Petitioner's association with Mr. Helm provided her with the skills and technical training that resulted in her own employment opportunities with Prime West as a cable splicer, and during each year in issue she provided services to that company as a cable splicer/employee. As it turned out, she and Mr. Helm worked as a team, although not necessarily at the same location, on many jobs for Prime West during the years in issue.

Prime West provides cable splicing services according to the specifications and needs of various telephone companies. Depending upon the location of the existing telephone line, cable splicing takes place underground, at ground level, and above ground on utility poles. Which tools a cable splicer needs to bring to a jobsite depends upon the location of the existing telephone line, the weather, and the telephone company. The telephone companies do not necessarily use the same type of equipment and/or materials in their respective telephone lines. Performing similar cable splicing services for different telephone companies often requires the use of different tools, depending upon the specific telephone line involved.

For any given cable splice procedure, and pursuant to the terms of a contract entered into between them, the telephone company provided Prime West with blueprints that indicated where and how the required cable splicing was to be accomplished. Actual conditions at the jobsite often required changes to terms of the contract between Prime West and the telephone company, which changes had to be documented by the cable splicer and approved by the telephone company. Petitioner routinely took photographs to document conditions that required any such changes. After the completion of a cable splice procedure, and before the blueprints were returned to Prime West, the cable splicer updated the blueprints to show the changes made. Prime West did not provide petitioner with an office to update blueprints or perform other necessary paperwork but compensated her for the time she spent in doing so.

Petitioner received her assignments and picked up necessary blueprints and supplies at Prime West's maintenance yard (maintenance yard). At the completion of each assignment, petitioner was required to submit a timesheet showing the time expended and work completed. In addition to date and time spent on any assignment, the timesheets show the job number and the geographical area, but not a specific location, where the work took place. When petitioner finished one job,

which could last anywhere from a few hours to more than a month, she would return to the maintenance yard, submit her timesheet for the assignment just completed, and pick up her next assignment. During the years in issue all of petitioner's assignments were within the metropolitan area where she lived. Debris and trash left over from an assignment could be disposed of in a dumpster at the maintenance yard. For convenience and at her own expense, petitioner often used a dumpster located on property that she owned.

From time to time Prime West and petitioner entered into written truck and tool lease agreements (equipment lease). Each equipment lease provides that Prime West would reimburse petitioner at a rate of $10 per hour for a vehicle identified in the lease and her tools used in connection with her employment as a Prime West cable splicer. An equipment lease entered into in 2003 covers the use of petitioner's 1997 Ford; an equipment lease entered into in 2004 covers her 2004 Dodge. Nothing in the record suggests what the fair rental value of petitioner's vehicles and tools was during any of the years in issue. Prime West did not require petitioner to substantiate the actual expenses incurred for the use of her vehicles or tools, and she was not required to return to Prime West payments made pursuant to the equipment lease that exceeded her costs.

Petitioner used a variety of vehicles in connection with her employment as a cable splicer with Prime West during the years in issue. In addition to the trucks and horse trailers listed above, petitioner also owned a 1990 Ford truck (1990 Ford), which she used from time to time to tow the Stampede trailer. Because some of her assignments required that she transport tools and supplies that would not fit in one of her trucks, she loaded the Stampede trailer with the overflow and towed the trailer to the jobsite behind the 1990 Ford or the 2004 Dodge. Petitioner equipped her 1997 Ford and her 2004 Dodge differently to accommodate the specific needs of different types of cable splicing jobs. In this way she did not repeatedly have to load and unload her trucks depending upon the requirements of a specific assignment.

Petitioner did not keep a diary or journal showing which vehicle she used or the distance traveled on any particular day for any particular assignment. She did, however, retain numerous receipts for gasoline and diesel fuel purchases. She also retained numerous receipts for repairs and other maintenance for the various vehicles that she owned. Depending upon the circumstances, sometimes petitioner left her residence and went first to the maintenance yard, sometimes she went first to a specific jobsite, sometimes she went back and forth between a jobsite and the maintenance yard, and sometimes she traveled from one jobsite to another on the

same day. Sometimes petitioner went to the maintenance yard at the end of the workday before she returned home, and sometimes she did not.

Petitioner purchased various tools, supplies, clothing, and boots that she used or wore in connection with her employment as a cable splicer/employee of Prime West. She also purchased a desk, an office chair, a lamp, and pens that she kept at her house that she used to update blueprints, prepare her timesheets, etc. For a portion of 2003 she stored some of her work tools and supplies in a garage on property that she owned. She sold that property in 2003, however, and from then on stored the items in a rented storage unit.

Prime West compensated petitioner in two ways: (1) she was paid an hourly wage reported on a Form W-2, Wage and Tax Statement, for each year; and (2) she was paid amounts attributable to the equipment leases. The amounts paid pursuant to an equipment lease were reported on a Form 1099-MISC, Miscellaneous Income, for each year. For less than a month during 2005 petitioner also worked as a cable splicer for West Coast Communications, Inc. (West Coast). Other than the amounts shown on the Form W-2 and the Form 1099-MISC. West Coast issued to petitioner for 2005, the record contains nothing that describes her employment with that company.

Health reasons prevented petitioner from working for about one month during 2004. During that period repair/maintenance bills for the 2004 Dodge show that the vehicle was driven approximately 1,000 miles, and receipts from various gas stations show that petitioner spent $183.51 for diesel fuel.

Petitioner was covered by health insurance during 2005, but her plan did not include coverage for dental expenses. During that year she incurred and paid expenses of at least $8,958 to various dentists for various services.

Petitioner's Federal income tax return for each year in issue was prepared by a certified public accountant (C.P.A.). As relevant here, each return shows the amounts reported on a Form W-2 as wages. The Forms W-2 issued to petitioner for 2004 and 2005 show State income tax withholdings of $406.31 and $1,154.20, respectively. The taxable income and income tax liability reported on petitioner's 2003 return are computed after taking into account itemized deductions claimed on a Schedule A. The taxable income and income tax liabilities reported on petitioner's 2004 return and 2005 return are computed after taking into account the standard deduction. See sec. 63. For each year the amount reported on a Form 1099-MISC. is shown as gross receipts on a Schedule C. The following deductions are claimed on the Schedules C:

| Deduction | 2003 | 2004 | 2005 |
|---|---|---|---|
| Car and truck expenses | $10,019 | $14,091 | $8,330 |
| Depreciation and section 179 expense | 25,340 | 17,816 | 5,350 |
| Legal and professional services | -0- | 260 | 250 |
| Office expense | -0- | 303 | 290 |
| Rent or lease of vehicles, machinery, and equipment | -0- | 1,434 | -0- |
| Supplies | 1,123 | 1,512 | 290 |
| Utilities | 460 | 490 | 511 |
| Other expenses [1] | 4,316 | 3,588 | 4,869 |

[1]These amounts include the cost of cell phone service, a dumpster, ice, and equipment storage. For 2005 the amount also includes "other supplies" not specifically identified.

In the notice respondent: (1) recharacterized the amounts shown as "gross receipts" on the Schedules C as "wages"; (2) disallowed all of the above-listed deductions; and (3) imposed a section 6662(a) accuracy-related penalty for each year in issue. According to the notice, the deductions were disallowed because petitioner failed to establish that the underlying expenses were ordinary and necessary trade or business expenses and/or because petitioner failed to substantiate the amount paid or incurred for each expense. Other adjustments made in the notice are computational and need not be addressed.

Discussion

Respondent now agrees that petitioner is entitled to business expense deductions for some or at least portions of some of the expenses listed above; according to respondent, however, the deductions now allowed must be treated as unreimbursed employee business expense deductions.[2] We focus our attention first on whether petitioner has properly substantiated the expenses that remain in dispute, and to the extent that she has, whether the expense is ordinary and necessary within the meaning of section 162. We then consider how allowable trade or business expense deductions must be treated.

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[3] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

---

[2]As noted, petitioner did not elect to itemize deductions for 2004 and 2005. Following the parties' lead, we ignore the requirement that unreimbursed employee business expenses, if otherwise deductible, must be deducted as a miscellaneous itemized deduction pursuant to an election made on the taxpayer's return. See sec. 63(e); see also Jahn v. Commissioner, T.C. Memo. 2008-141, aff'd, 392 Fed. Appx. 949 (3d Cir. 2010). Of course, itemized deductions allowed in this proceeding would be in lieu of, rather than in addition to, the standard deductions claimed on petitioner's 2004 and 2005 Federal income tax returns.

[3]Petitioner does not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

This burden requires the taxpayer to substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90; sec. 1.6001-1(a), Income Tax Regs.

According to petitioner, the deductions disallowed in the notice are allowable under section 162(a).  That section generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  The term "trade or business" as used in section 162(a) includes the trade or business of being an employee.  Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970); Christensen v. Commissioner, 17 T.C. 1456, 1457 (1952).  The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact.  See

Commissioner v. Heininger, 320 U.S. 467, 475 (1943). On the other hand, section 262(a) generally disallows a deduction for personal, living, or family expenses.

As a general rule, if a taxpayer provides sufficient evidence that the taxpayer has incurred an expense contemplated by section 162(a), but the taxpayer is unable to adequately substantiate the amount of expense, then the Court may estimate the amount of such expense and allow the section 162(a) deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Otherwise, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Against these fundamental principles of Federal income taxation, we turn our attention to the deductions remaining in dispute.

I. Deductions Disallowed in the Notice

A. Vehicle Expenses, Including Depreciation

For each year in issue petitioner claimed a deduction for car and truck expenses based on actual expenses associated with the use of her 1990 Ford, 1997 Ford, and 2004 Dodge. Routinely, petitioner drove one or the other of her vehicles between her residence, the maintenance yard, and numerous jobsites. Although the

record allows for a general determination of mileage driven for business purposes, because petitioner did not keep a log or other contemporaneous documents we cannot tell where she was, or drove to, or drove from, etc., on any given day. This presents a problem because petitioner is entitled to a deduction for the costs of her transportation expenses for driving between the jobsites, see Steinhort v. Commissioner, 335 F.2d 496, 503-504 (5th Cir. 1964), aff'g and remanding T.C. Memo. 1962-233; Heuer v. Commissioner, 32 T.C. 947, 953 (1959), aff'd per curiam, 283 F.2d 865 (5th Cir. 1960), but some of her driving expenses were incurred in commuting between her residence and her regular place of business, that is, the maintenance yard. Normally, transportation expenses incurred between one's residence and one's principal place of business are nondeductible personal expenses. See sec. 262(a); Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946).

Furthermore, deductions for vehicle expenses paid or incurred in connection with a taxpayer's trade or business are subject to the strict substantiation requirements of section 274(d). Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). If otherwise deductible, then expenses subject to section 274(d) must be substantiated either by adequate records or by sufficient evidence corroborating the taxpayer's own statement showing: (A) the amount of

the expense; (B) the time and place the expense was incurred; (C) the business purpose of the expense; and (D) in the case of an entertainment or gift expense, the business relationship to the taxpayer of each expense incurred. For "listed property" expenses, such as automobiles, in addition to the recordkeeping requirements in section 274(d), the taxpayer must establish the amount of business use and the amount of total use for such property. See sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

The "listed property" requirements do not apply to the 1997 Ford because that vehicle is a qualified nonpersonal use vehicle. See sec. 1.274-5(k)(1), (2), (7), Income Tax Regs. Nothing in the record, however, suggests that the 1990 Ford or the 2004 Dodge is exempt from the strict substantiation requirements of section 274 and its corresponding regulation.

Petitioner testified that the 1997 Ford was used 100% for business purposes and the 2004 Dodge was used 80% for business purposes. Petitioner's failure to maintain a mileage log, however, constrains us to reject her testimony with respect to both vehicles. One or more of her vehicles was obviously used for what would have to be considered commuting purposes, although we cannot tell exactly which one on any given date or to what extent. To allow for the commuter use of her vehicles, for each year in issue petitioner is entitled to a deduction for vehicle

expenses that includes only 80% of the expenses attributable to the 1997 Ford. See Cohan v. Commissioner, 39 F.2d at 543-544.

Furthermore, petitioner's recollection of the extent to which the 2004 Dodge was used for business purposes is obviously flawed. The receipts for diesel fuel purchased while petitioner was not working show that the vehicle was used for personal purposes far more than 20% of the time. Under the circumstances, petitioner's failure to maintain a mileage log for the use of her 2004 Dodge operates to deny her any deduction for the use of that vehicle. See sec. 274(d). We recognize that a taxpayer may satisfy the strict substantiation requirements of section 274(d) through testimony and other evidence that expenses have been incurred, see sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985), but petitioner's overestimate of the extent to which that vehicle was used for business purposes requires that we attribute no weight to her testimony with respect to the business use of that vehicle.

Petitioner provided no estimate of the extent to which the 1990 Ford or the Stampede horse trailer was used for business purposes. Consequently, she is entitled to no deduction for the expenses incurred for using either.

B.  Office Expenses

Petitioner claimed office expense deductions of $303 and $290 for 2004 and 2005, respectively.  The office expense deductions include the cost of a computer, printer and ink cartridges, a DVD player, a digital camera, and a GPS device, all of which are listed property under section 280F(d)(4) subject to the strict substantiation requirements of section 274(d).  Petitioner provided receipts adequately substantiating the purchase price of each of the aforementioned items.  Petitioner explained how the digital camera was used in connection with her employment with Prime West, and the use of the GPS device in connection with her employment is obvious.  However, she failed to establish that the costs of the computer, the printer and the ink cartridges, and the DVD player were ordinary and necessary business expenses.  See sec. 162(a).  Only the costs of the digital camera and the GPS device may be deducted.

C.  Rent or Lease of Vehicles, Machinery, and Equipment

Petitioner claimed a $1,434 deduction for the rent or lease of vehicles, machinery, and equipment for 2004.  Petitioner did not present any evidence regarding this expense.  Accordingly, petitioner is not entitled to a deduction for rent or lease of vehicles, machinery, and equipment for 2004.

D.  Supplies

Petitioner claimed a deduction for supplies expenses for each year in issue. Petitioner provided receipts adequately substantiating the supplies expenses for each year in issue; however, she failed to show how any of the expenses were related to her trade or business.  On the contrary, many of the claimed expenses were for personal items, such as food, jewelry, stamps, and shipping.  See sec. 262(a). Accordingly, petitioner is not entitled to a deduction for supplies for any year in issue.

E.  Utilities

Petitioner claimed a deduction for utilities expenses for each year in issue. Petitioner testified that the utilities expenses relate to the cost of water, electricity, and telephone bills for the property she owned in 2003 on which she stored her business equipment.  Petitioner did not explain why she deducted utilities expenses for 2004 or 2005 with respect to property that was sold at some point during 2003. Petitioner adequately substantiated the utilities expense for 2003, and the expense appears to be ordinary and necessary.  Accordingly, petitioner is entitled to a deduction for utilities expenses for 2003 but is not entitled to a deduction for utilities expenses for 2004 or 2005 because she failed to demonstrate that she incurred such expenses.

F. <u>Other Expenses</u>

Petitioner claimed a deduction for "other expenses" for each year in issue. As relevant here, "other expenses" includes the cost of a dumpster, ice, and equipment storage. For 2005 the expense includes additionally the cost of "other supplies" that petitioner did not identify.

She provided monthly bills adequately substantiating the dumpster expense. At trial she explained that Prime West provided a dumpster at the maintenance yard for the waste generated at the jobsites. According to petitioner, the dumpster at the maintenance yard was often full, and she found that it was more convenient to use the dumpster at her residence than to drive to the dumpster at the maintenance yard. Under the circumstances, we find that the dumpster expenses were not ordinary and necessary within the meaning of section 162(a). Petitioner is not entitled to a deduction for this expense for any year in issue.

For each year in issue more than $400 for the cost of ice is included in the deduction claimed for other expenses. Petitioner did not provide any receipts, other substantiating documentation, or testimony regarding this expense. Petitioner has failed to establish that the cost of ice was an ordinary and necessary

business expense relating to her employment with Prime West. Accordingly, petitioner is not entitled to a deduction for ice for any year in issue.

Petitioner claimed deductions of $395, $660, and $660 for equipment storage for 2003, 2004, and 2005, respectively. The storage fees have been substantiated and were incurred in connection with tools petitioner used as a Prime West employee. Accordingly, petitioner is entitled to a deduction for equipment storage for each year in issue.

Petitioner claimed a $1,327 deduction for "other supplies" for 2005. Petitioner did not present any evidence regarding her other supplies expenses. Accordingly, we hold that petitioner is not entitled to deduct other supplies expenses for 2005.

G. Tools

Petitioner claimed a deduction for tools expenses for 2005. She provided receipts, photographs, and testimony to substantiate the amount she expended on tools. We find that the costs of the tools were ordinary and necessary business expenses, see sec. 162(a), and that petitioner adequately substantiated those expenses. Accordingly, petitioner is entitled to a deduction for tools for 2005.

Having found the extent to which petitioner is entitled to deductions for trade or business expenses, we turn our attention to the manner in which those deductions

must be treated for Federal income tax purposes. According to petitioner, the expenses are properly taken into account on a Schedule C in the computation of her adjusted gross income; according to respondent, those deductions must be taken into account on a Schedule A in the computation of her taxable income. For the following reasons, we agree with respondent.

Petitioner was not engaged in an equipment rental trade or business independent of her employment with Prime West during any of the years in issue. Furthermore, there is nothing in the record that remotely connects the rental fee agreed upon in the equipment leases to the fair rental value of the equipment subject to those leases. Although there is no specific evidence in the record on the point, we think it unlikely that the 1997 Ford would command the same rental fee as the 2004 Dodge in leases that cover the same period. The form of the equipment leases notwithstanding, in substance the equipment leases represent Prime West's program to reimburse its cable splicer/employees for expenses incurred in connection with their employment. For Federal tax purposes, the substance of a transaction takes precedence over the form of the transaction. See generally Commissioner v. Court Holding Co., 324 U.S. 331 (1945); Gregory v. Helvering, 293 U.S. 465 (1935).

The treatment of payments received and expenses incurred by an employee subject to the employer's employee business expense reimbursement plan depends upon whether the plan is an accountable plan or a nonaccountable plan.

As relevant here, section 1.62-2(c)(4), Income Tax Regs., provides that expenses reimbursed pursuant to an accountable plan "are excluded from the employee's gross income, are not reported as wages or other compensation on the employee's Form W-2, and are exempt from the withholding and payment of employment taxes". Payments made under an employee business expense reimbursement arrangement that does not satisfy one or more of the requirements of the accountable plan are treated as paid under a "nonaccountable plan". Sec. 1.62-2(c)(3), Income Tax Regs. Expenses reimbursed pursuant to a nonaccountable plan are deductible by the employee as miscellaneous itemized deductions. Sec. 1.62-2(c)(5), Income Tax Regs.

Among other things, in order to qualify as an accountable plan under section 62(a)(2)(A), an employee business expense reimbursement plan must (1) require that the employee substantiate the expenses incurred, and (2) return the amount received that exceeds expenses incurred. Sec. 1.62-2(c)(1), Income Tax Regs. The equipment leases fail to satisfy either requirement. Consequently, neither the income petitioner received pursuant to those leases nor the deductible trade or

business expenses she incurred as an employee of Prime West are properly reportable on a Schedule C for any of the years in issue.

## II. Additional Itemized Deductions

### A. State and Local Income Taxes

Petitioner now claims entitlement to deductions for the amounts shown on her 2004 and 2005 Forms W-2 for State and local income taxes.[4]

As relevant here, section 164(a)(3) provides that State and local income taxes are allowed as a deduction for the taxable year within which they are paid or accrued. Petitioner's Forms W-2 for 2004 and 2005 show that petitioner paid the amounts now claimed, and she is entitled to deductions for those amounts.

### B. Deduction for Dental Expenses

Petitioner now claims entitlement to a deduction for dental expenses paid in 2005.[5]

In general, section 213(a) allows a deduction for expenses paid during the taxable year for medical care that are not compensated for by insurance or otherwise and to the extent that such expenses exceed 7.5% of adjusted gross income. For 2005 petitioner paid dental expenses of $8,958 which were not covered by her

---

[4]See supra note 2.

[5]See supra note 2.

health insurance plan. Accordingly, she is entitled to an itemized deduction in an amount appropriately computed pursuant to that section.

III. Accuracy-Related Penalties

Lastly, we consider whether petitioner is liable for a section 6662(a) accuracy-related penalty for any of the years in issue. Relying upon various grounds, respondent argues that she is liable for all of those years. See sec. 6662(a)-(d).

Petitioner's Federal income tax return for each year in issue was prepared by a C.P.A. From her presentation at trial, we are satisfied that she reasonably relied upon the C.P.A. to do what she paid him to do. Under the circumstances we find that petitioner had reasonable cause for the underpayment of tax required to be shown on her return for each year in issue and that she acted in good faith with respect to those underpayments. See sec. 6664(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Petitioner is not liable for the section 6662(a) accuracy-related penalty for any of the years in issue.

To reflect the foregoing,

Decision will be entered

under Rule 155.